# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

UNITED STATES OF AMERICA,

         **Plaintiff**

-vs-                                         **Case No. 2:09-cr-46-FtM-29DNF**

JOSEPH LEWIS SMITH,

         **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration on the following motion filed herein:

> **MOTION:** **MOTION TO SUPPRESS EVIDENCE RECEIVED BY PLAINTIFF AS A RESULT OF THREE UNLAWFUL SEARCHES CONDUCTED BY LAW ENFORCEMENT PURSUANT TO THREE SEPARATE SEARCH WARRANTS, RESPECTIVELY, AND ONE UNLAWFUL WARRANTLESS VEHICLE SEARCH (Doc. No. 26)**
>
> **FILED:** **September 10, 2009**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED.**

    The Defendant, Joseph Lewis Smith is requesting that the Court suppress the evidence seized pursuant to three separate Search Warrants, and from a warrantless search of the Defendant's vehicle.[1]

---

[1] The Defendant withdrew his argument that the Search Warrant executed on February 24, 2009 (Gov. Ex. 2a and 2b) was improperly executed by Judge Joseph A. Simpson, a state court judge, and Sgt. Arey. (See, Tr. p. 40).

On September 23, 2009, the Government filed a Response (Doc. 31) in opposition to the relief requested. The Defendant is charged in a two count Indictment (Doc. 1). In Count One, the Defendant is charged with possessing matters containing a visual depiction involving the use of a minor engaging in sexually explicit conduct that had been transported in interstate and foreign commerce in violation of 18 U.S.C. §§2252(a)(4)(B) and 2252(b)(2). In Count Two, the Defendant is charged with receiving a visual depiction involving the use of a minor engaging in sexually explicit conduct that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer in violation of 18 U.S.C. §§2252(a)(2) and 2252(b)(1). An evidentiary hearing was held on September 29, 2009.[2]

**I. Testimony**

The Government presented the testimony of Sergeant Christopher Arey, Deputy James Divis, and Deputy Adam Gahrmann who are all employed by the Lee County Sheriff's Office. (Tr[3]. p. 9, 63, 100). Both parties submitted documentary evidence.

The testimony at the hearing was as follows. In February 2009, Sgt. Arey was a detective in the sex crimes unit. (Tr. p. 10). He was investigating the Defendant. (Tr. p. 9-10). Sgt. Arey prepared 3 search warrants all relating to a violation for Lewd or Lascivious Molestation, F.S.S. 800.04(5)(b). (See, Gov. Ex. 1a-3b, Tr. p. 10). The First Search Warrant (Gov. Ex. 1a and 1b) was signed on February 17, 2009, and was for the search of residence of the Defendant at 18562 Zinnia Road, Fort

---

[2] The parties were given leave to file additional briefs, but neither party chose to file additional briefs.

[3] "Tr." refers to the Transcript (Doc. 39) of the evidentiary hearing held on September 29, 2009.

Myers, FL 33967. (Tr. p. 11, 12). The Second Search Warrant (Gov. Ex. 2a and 2b) was signed on

February 24, 2009, and was for the search of two computers. (Tr. p. 11). The Third SearchWarrant

was signed on February 25, 2009, and was for the search of Defendant's vehicle. (Tr. p. 11). Sgt.

Arey was the affiant on all three search warrants. (Tr. p. 11-12).

The items listed in the Search Warrant dated February 17, 2009, are as follows:

1) KY lubricants and oils.
2) Body rubbing oils
3) Blue in color "Vibrator" sex toy with a curve at one end.
4) Data records related to the above computer related items, whether stored on paper (including computer printouts), on magnetic media such as tapes, cassettes, disk or memory devices such as optical disks, electronic address books, or any other storage media.
5) Any documents or other papers which contain set or sets or numbers or characters which may represent access codes or passwords for the computer, stored computer records, any on-line services, or other long distance carriers, and/or authorized credit agencies.
6) Computer printouts
7) Back-up copies of data and programs on floppy diskettes and other storage media. (Because computer stored data is so vulnerable, most computer users keep back-ups so if data is erased or deleted from the system itself, it may be recoverable on the back-up copies).
8) Data contained on all storage devices, including, but not limited to graphic and text files.
9) Any and all correspondence to or from a potential victim, or any other individual or individuals who engage in the sexual exploitation of children.
10) Photographs of the interior of the residence.

(Gov. Ex. 1a, Tr. p. 12). These items were listed in the February 17, 2009 Search Warrant as well

as the Affidavit in support of the Search Warrant. (Tr. p. 13). Sgt. Arey referred to an evidence log

and testified that pursuant to the Search Warrant executed on February 17, 2009, he seized from the

residence, Lubriderm Skin Repair, KY Moisturizer Enhancing, 2 KY Touch Massages, vibrator, silver

vibrator, penis ring with curve at one end, plastic bottle with black top containing oily substance, black

tower computer, and a black and gray Dell computer tower. (Tr. p. 14-15). Sgt. Arey believed that

the Search Warrant authorized the search for and seize of the computer related items as well as the computers themselves. (Tr. p. 15-16).

On cross-examination, counsel for the Defendant directed Sgt. Arey to the language of the February 17, 2009, search warrant. (Tr. p. 30). Specifically, counsel questioned Sgt. Arey about item 4 which contained the following language: "Data records related to the above computer related items." (Tr. p. 30). Sgt. Arey could not testify that the February 17, 2009 Search Warrant had any "above computer" listed. (Tr. p. 30-34). Sgt Arey testified that he believed that "related items" allowed him to seize the computers. (Tr. p. 36-37).

On re-direct examination, Sgt. Arey testified that the items to be searched for in the February 17, 2009 Search Warrant were cut and pasted from the Affidavit for Search Warrant. (Tr. p. 55-56). Sgt. Arey testified that in the Affidavit for Search Warrant (Gov. Ex. 1b), the "above computer" referred to "mother's computer at the mother's residence and his computer at his residence to research, How to bond with a child." (See, Gov. Ex. 1b, p.3, Tr. p. 57). Sgt. Arey had reason to believe that when he executed the February 17, 2009 Search Warrant of the residence that there were two computers in the house, the Defendant's computer and his girlfriend's computer. (Tr. p. 57-58). Sgt. Arey believed that the February 17, 2009 Search Warrant authorized him to seize any computer found, but he believed that he was required to obtain a second search warrant to search the contents of the computers. (Tr. p. 59).

After the computers were seized, Sgt. Arey obtained a second Search Warrant to search the contents of the computers. (Tr. p. 16). Sgt. Arey prepared this Search Warrant dated February 24, 2009, and the Affidavit, and presented them to Judge Joseph A. Simpson. (Tr. p. 16, Gov. Ex. 2a, 2b).

Sgt. Arey testified that the Search Warrant of February 17, 2009, allowed him to seize the computers but did not allow him to search the contents of the computers. (Tr. p. 22).

On February 24, 2009, Sgt. Arey completed an Open Booking Sheet for the arrest of the Defendant. (Tr. p. 24, 47). An Open Booking Sheet contains a probable cause affidavit regarding criminal charges, in this case Lewd and Lascivious Molestation. (Tr. p. 24). When an Open Booking Sheet is active, a deputy can check to verify it is active, and then arrest an individual for the charges that are pending against him. (Tr. p. 24, 26). On February 25, 2009, Sgt. Arey received information that the deputy that stopped the Defendant in his vehicle for the charges listed in the Open Booking Sheet saw items in the Defendant's vehicle that might be related to the charges against the Defendant. (Tr. p. 23, 27). The Defendant was arrested for a traffic violation and for the charges in the Open Booking Sheet. (Tr. p. 29, 49-50). Sgt. Arey was not present at the search of the Defendant's vehicle. (Tr. p. 28). After the Defendant was arrested, the Open Booking Sheet was closed. (Tr. p. 29).

The third Search Warrant prepared by Sgt. Arey on February 25, 2009 was for the search of a GMC Yukon for an APPLE I-phone, H/P laptop computer, data records from those items, and certain other items as well. (Tr. p. 23, 27, Gov. Ex. 3a, 3b). The Yukon belonged to the Defendant. (Tr. p. 23). The Yukon was located at the impound lot which is controlled by law enforcement. (Tr. p. 27).

Deputy Divis testified that on February 24, 2009, he was working in the Road Patrol Division of the Lee County Sheriff's Office. (Tr. p. 63-64). When he began working, he checked for active Open Booking Sheets in his area. (Tr. p. 64). He found an Open Booking Sheet for the Defendant. (Tr. p. 64). He obtained the Defendant's name, birth date, address, and the charges against him. (Tr. p. 65). He went to the Defendant's residence to take the Defendant into custody on the Open Booking

Sheet charges, but did not find the Defendant at home. (Tr. p. 65-66). Deputy Divis researched the Defendant further, and learned the type of vehicles he owned, and looked at a photograph of the Defendant. (Tr. p. 66). Deputy Divis also learned that the Defendant's driver's license was suspended. (Tr. p. 67). Deputy Divis saw a vehicle matching the description of the Defendant's vehicle and observed the license plate "Jo Cool" which matched the Defendant's license plate. (Tr. p. 66-67). Deputy Divis followed the vehicle into the parking lot of a community park. (Tr. p. 67). Deputy Divis testified that the person in the vehicle resembled the Defendant. (Tr. p. 67). Deputy Divis pulled behind the Defendant's vehicle, activated his emergency lights, and exited his vehicle. (Tr. p. 68). The Defendant was slouching in his car, and Deputy Divis could not see the Defendant's hands. (Tr. p. 68). Deputy Divis drew his weapon and told the Defendant to exit his vehicle. (Tr. p. 68). Deputy Divis removed his weapon because this was a felony stop based upon the lewd and lascivious Open Booking Sheet. (Tr. p. 68-69).

Deputy Divis gave the Defendant a citation on the driving with a suspended license charge and arrested him on that charge. (Tr. p. 69). He also verified that the Open Booking Sheet on the lewd and lascivious charge was still open. (Tr. p. 69). When he learned it was still open, he advised the Defendant that he was arresting him on that charge as well. (Tr. p. 69, 95-97).

When the Defendant existed the vehicle, he left the driver's door open and the keys in the car. (Tr. p. 70). Deputy Divis escorted the Defendant to his patrol car. (Tr. p. 70). Deputy Divis returned to the Defendant's vehicle to assure himself that there were no other occupants, and as he walked around the vehicle he noticed items in the Defendant's vehicle that could be related to the lewd and lascivious charge. (Tr. p. 70). Deputy Divis noticed a blackberry in the center console and an I-phone or I-Touch, CD's or DVD's throughout the vehicle, a camera case, and a laptop computer.(Tr. p. 70-

71).  Deputy Divis saw these items through the open door or through the windows of the vehicle.  He did not open any of the items to see them.  (Tr. p. 71).  Deputy Divis only reached into the vehicle to remove the keys and then shut the driver's door. (Tr. p. 91).

Incident to the arrest, Deputy Divis searched the Defendant for weapons. (Tr. p. 71).  He found no weapons on the Defendant, but did take the Defendant's license. (Tr. p. 71).  Another deputy arrived on the scene, and a tow truck was called. (Tr. p 71).  The tow truck was called because it is standard procedure when the driver is arrested and he is not at his residence, and there are no other individuals at the scene to move the vehicle. (Tr. p. 72).  A private tow company was called initially to tow the vehicle to a private tow yard. (Tr. p. 72).  It is Sheriff's Office procedure to do an inventory search of the vehicle to protect the Sheriff's Office and the tow company from liability for the objects in a vehicle. (Tr. p. 72-73).  Deputy Divis explained that an inventory is done when the vehicle is being towed to a private tow yard, but an inventory of a vehicle is not done when it is being impounded at the Sheriff's Office lot. (Tr. p. 74, 87, 89).

Deputy Divis contacted his sergeant, Sgt. Bell to notify him that he had the Defendant in custody. (Tr. p. 73).   Sgt. Bell then contacted the officer in charge of the investigation of the Defendant and told him about the objects Deputy Divis saw in the vehicle. (Tr. p. 73-74).  After contact was made with the case detective, it was decided that the vehicle should be towed to the Sheriff's Office impound lot, and not to a private tow yard. (Tr. p. 74).  The vehicle was towed to the Sheriff's Office impound lot. (Tr. p. 74-75).  Deputy Divis was shown photographs of the vehicle and the inside of the vehicle and he identified the photographs as what he saw from the outside of the vehicle.  (Tr. p. 76-77, Gov. Ex. 4a-4E).

Deputy Gahrmann testified that he assisted Deputy Divis in arresting the Defendant on the Open Booking Sheet. (Tr. p. 100). When he arrived at the parking lot of the community park, he saw the Defendant on the ground , and Deputy Gahrmann handcuffed him, stood him up, patted him down, and placed him in the back of the patrol car. (Tr. p. 102). Deputy Gahrmann began the inventory search of the Defendant's vehicle because it was being towed to a tow yard and that was Sheriff's Office procedure. (Tr. p. 102-103). The inventory search is done so that if an item is missing later, the officer can state that it was in the vehicle prior to towing. (Tr. p. 103). Deputy Gahrmann began in the rear of the vehicle and started by listing the items on a Property Receipt (Def. Ex. 4), but he stopped the inventory search when he learned that the vehicle was being towed to the Sheriff's Office impound lot. (Tr. p. 104). His inventory was not completed when he stopped. (Tr. p. 104, 106-107). Deputy Gahrmann testified that he observed the items in the rear of the vehicle, but did not open any of the bags or containers. (Tr. p. 104-105). He did touch the item that looked like a camera bag and felt what appeared to be a camera inside of it, but did not open the bag. (Tr. p. 110-111). Deputy Gahrmann told Deputy Divis about the items he saw in the vehicle and that these items may be related to the lewd and lascivious charge. (Tr. p. 106).

**II. Analysis**

The Defendant argues that the Search Warrant executed February 17, 2009 did not provide for the seizure of the two computers. Further, the Defendant argues that if the computers were seized illegally, then the second Search Warrant executed on February 24, 2009, which allowed the officers to search the contents of these two computers was illegal as it was based upon the illegal seizure of

the two computers. Further, the Defendant argues that the search of the vehicle was illegal as a search incident to arrest.[4]

### A. Seizure of Two Computers from Residence

The Defendant argues that the first Search Warrant executed on February 17, 2009 (Gov. Ex. 1a), did not provide for the search or seizure of the two computers from the Defendant's residence. The Search Warrant of February 17, 2009 listed in the "Items To Be Searched For" in relation to actual computers: "4) Data records related to the above computer related items..." The Search Warrant did provide for the search for other items related to computers such as computer printouts and back-up copies, but no mention of an actual computer was listed. The Defendant argues that the Search Warrant of February 17, 2009, was not particularized enough for the officers to search for and seize the two computers.

The Affidavit for Search Warrant (Gov. Ex. 1b) executed on February 17, 2009 was attached to the Search Warrant. The Affidavit for Search Warrant contains the exact same list of "Items To Be Searched For," however, in the paragraphs above the "Items To Be Searched For", the Affidavit contains the following language: "The suspect advised he used the mother's computer at the mother's

---

[4] The Court raised the issue of whether the third Search Warrant executed on February 25, 2009, which authorized the search of the Defendant's vehicle was tainted if the first Search Warranted executed on February 17, 2009 was invalid as to the two computers seized. When information is included in an affidavit in support of a warrant, and the information was obtained as a result of an unlawful search, then the exclusionary rule applies and the items seized cannot be used by the prosecution in its case-in-chief. *United States v. Parker*, 600 F.Supp.2d 1251, 1257 (M.D. Fla. 2009). The Court carefully reviewed the third Search Warrant executed on February 25, 2009, and no mention was made of the contents of the two computers seized in the search of the Defendant's residence. Therefore, the Court finds no taint as to the third Search Warrant executed on February 25, 2009.

residence and his computer at his residence to research, How to bond with a child." (Gov. Ex. 1b, p. 3). The Search Warrant of February 17, 2009, did include the following language, "[t]he evidence believed to be within 18562 Zinnia Road, Fort Myers, Florida 33967 is to include, but not limited to the below listed items." (Gov. Ex. 1a, p. 1). The below listed items were the "Items To Be Searched For." (Gov. Ex. 1a, p. 1).

The Fourth Amendment to the United States Constitution requires that search warrants "'particularly describ[e] the place to be searched, and the persons or things to be seized.'" *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007). "The point of the Fourth Amendment's particularity requirement is to protect individuals from being subjected to general, exploratory searches." *Id*. (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). If a search warrant fails to specify the place to be searched and the items to be seized then it and the corresponding search violate the Fourth Amendment. *Id*. at 1290. A seizure resulting from a search that exceeds the scope of the warrant is unconstitutional. *United States v. Edwards*, 2009 WL 2622091 (11th Cir. August 27, 2009). Any terms of an affidavit in support of a search warrant are given their "'common sense and realistic'" meaning. *United States v. Khanani*, 502 F.3d at 1289. The February 17, 2009 Affidavit does refer to the Defendant using the mother's computer and his own computer for research on "How to bond with a child." (Gov. Ex. 1b). Neither the February 17, 2009 Affidavit or Search Warrant have any other reference to a computer. However, the list for the items to be searched contains many references to items relating to and found within computers including but not limited to storage devices for graphic and text tiles, data records relating to a computer, magnetic media, cassettes, disk or memory devices, and backup files. It was reasonable for the officers to seize the computers based

upon the items listed in the Search Warrant. By seizing the computers the officers were within the terms of the search warrant and affidavit and were not conducting a general search.

The Supreme Court held that there is a "good faith" exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court found that in some cases, evidence obtained when an officer was acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate may not be barred even if not supported by probable cause. *Id*. at 900. The good faith exception to the exclusionary rule does not apply in four instances:

> (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) "where the issuing magistrate wholly abandoned" his detached and neutral judicial role; "(3) where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) where, depending upon the circumstances of the particular case, a warrant is 'so facially deficient -i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid.'"

*United States v. Parker*, 600 F.Supp.2d 1251, 1259 (M.D. Fla. 2009). The last exception regarding whether the warrant was deficient in failing to particularize the things to be seized would be the only exception that would apply in this case. If the issuing judge was neutral and detached, then suppression is appropriate only "'if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *Id*. (citing *United States v. Leon*, 468 U.S. 897, 926 (1984)). The Defendant failed to show that Sgt. Arey was dishonest or reckless in preparing his affidavit. Sgt. Arey testified that he believed that the February 17, 2009 Search Warrant authorized him to search for and seize computers as well as computer-related items. His belief was objectively reasonable based upon the list of the Items To Be Searched including all manner of computer related items. Therefore, even if it is determined that the

February 17, 2009 Search Warrant lacked particularity as to the two computers seized, the Court finds

that the good faith exception would apply and the officers lawfully seized the two computers.[5]

## B. Search of Vehicle

Defense counsel raises the argument that pursuant to *Arizona v. Gant*, 129 S.Ct. 1710 (2009),

that the search of the vehicle was illegal. Counsel noted that *Arizona v. Gant*, was decided after the

search in this case was conducted, however, he argues that a search of a vehicle incident to arrest is

legal only when the "arrestee is unsecured and within reaching distance of the passenger compartment

at the time of the search." *Arizona v. Gant*, 129 S.Ct. at 1719. The Supreme Court also concluded

"that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it

is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id*.

When the arrest is based upon a traffic violation, then there is no reasonable basis to believe that the

vehicle contains relevant evidence, however, if the arrest is based upon another offense, then the arrest

"will supply a basis for searching the passenger compartment of the arrestee's vehicle and any

containers therein." *Id*.

---

[5] If the District Court disagrees with the recommendation that seizing of the two
computers was lawful, then the Court will also address the issue that the Defendant raises that all
items seized during the February 17, 2009 search of the residence should be suppressed. "Total
suppression of all items seized, including items within a warrant's scope, is not appropriate unless
the executing officers' conduct 'exceeded any reasonable interpretation of the warrant's
provisions.'" *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) (quoting *United
States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir. 1982)). "'[A]bsent a 'flagrant disregard' of the
terms of the warrant, the seizure of items outside the scope of a warrant will not affect
admissibility of items properly seized.'" *Id*. (quoting *United States v. Wuagneux*, 683 F.2d 1343,
1354 (11th Cir. 1982)), and *United States v. Hendrixson*, 234 F.3d 494, 497 (11th Cir. 2000). The
Court finds no evidence of a flagrant disregard for the terms of the warrant, and therefore, if the
District Court finds the seizure of the computers to be unlawful, then this Court recommends that
only the two computers be suppressed and information obtained from the two computers based
upon the February 24, 2009 Search Warrant be suppressed as well.

In this case, however, the search of the vehicle conducted by Deputy Gahrmann was for the purpose of an inventory. An inventory search permits the search of property that is lawfully in the custody of law enforcement officers and is consistent with law enforcement's care-taking function. *United States v. Pineda*, 165 Fed.Appx. 772, 776-777 (11th Cir. 2006) (quoting *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir.1985)). A necessary predicate to a lawful inventory search of a vehicle is a lawful impoundment of that vehicle. *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir.), *cert. denied* 502 U.S. 993 (1991). A law enforcement officer may impound a vehicle as long as the decision to impound the vehicle is based upon standard criteria and "on the basis of 'something other than suspicion of evidence of criminal activity.'" *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992). Police officers have the authority to remove from the streets vehicles which are impeding traffic or threatening public safety. *South Dakota v. Opperman*, 428 U.S. 364, 368-9 (1976). Although officers may give an individual an opportunity to make his own arrangements to have the vehicle removed, the Fourth Amendment does not require the officers to give an individual this option. *Colorado v. Bertine*, 479 U.S. 367, 373-4 (1987). When a vehicle is left without a licensed driver in the course of a lawful stop, the Constitution only requires that the police act reasonably with regard to the vehicle. *Sammons v. Taylor*, 967 F.2d 1533, (11th Cir. 1992), (citing *United States v. Rodriguez-Morales*, 929 F.2d 780 (1st Cir. 1991)).

In the instant case, the Defendant was the only individual in the vehicle when he was stopped. The vehicle was in a community park and not at the Defendant's residence. Both Deputy Divis and Deputy Gahrmann testified that it is Lee County Sheriff's Office procedure to conduct an inventory search of a vehicle prior to towing it to a private tow yard to protect the Sheriff's Department and the tow yard from liability for allegedly missing items. Deputy Gahrmann began to conduct the inventory

search, but stopped when he learned that the vehicle would be towed to the Sheriff's impound lot and an inventory was not necessary. Deputy Divis testified that he only looked into the vehicle and saw certain objects. The only time he entered the vehicle was to remove the keys and then close the driver's door. The Court finds that the search of the vehicle was an inventory search and was properly conducted pursuant to the procedures of the Lee County Sheriff's Office, and therefore the inventory search was lawful.

### III. Conclusion

The Court determines that the officers lawfully searched and seized evidence pursuant to the Search Warrants dated February 17, 2009, February 24, 2009, and February 25, 2009, and the inventory search, and respectfully recommends that the Motion to Suppress Evidence Received by Plaintiff as a Result of Three Unlawful Searches Conducted by Law Enforcement Pursuant to Three Separate Search Warrants, Respectively, and One Unlawful Warrantless Vehicle Search be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this  5th  day of   November, 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record